# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **L.L.-1, L.L.-2, and S.L.**

**No. 18-0222** (Jackson County 17-JA-60, 17-JA-61, and 17-JA-62)

## MEMORANDUM DECISION

Petitioner Father G.L., by counsel Roger L. Lambert, appeals the Circuit Court of Jackson County's February 7, 2018, order terminating his parental and custodial rights to L.L.-1, L.L.-2, and S.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Ryan M. Ruth, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that the conditions of abuse and neglect had not been remedied and in finding that he willfully failed to cooperate in the formulation of a reasonable family case plan.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2017, the DHHR filed a petition alleging that petitioner permitted the children's biological mother to have contact with them, even though her parental rights were previously terminated. The DHHR alleged that petitioner and the mother were parties to an abuse and neglect case which concluded in January of 2017. According to the DHHR, the previous petition alleged drug use and domestic violence, to which the parties stipulated. Petitioner was the only party that fully participated in the proceedings and, as a result, he obtained full custody; the mother's parental rights were terminated. The DHHR further alleged that the mother was observed on petitioner's back porch during a home visit in March of 2017 and appeared to be under the influence of controlled substances. After a search through petitioner's home, the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we refer to them as L.L.-1 and L.L.-2.

DHHR found some of mother's belongings inside. The DHHR removed the children from the home. Petitioner did not appear for his preliminary hearing, but was represented by counsel.

The circuit court held adjudicatory hearings in May, June, and August of 2017; petitioner did not appear for these hearings, but was represented by counsel. A DHHR worker testified that he received a referral that alleged petitioner continued to allow the mother to stay at his home while the children were there. The worker testified that he conducted interviews with the children at school and they indicated that their mother was staying in the home and that the parents engaged in domestic violence since she returned. According to the worker, he went immediately to petitioner's home and located the mother there. The worker observed the mother rocking in place which caused him to believe that she was under the influence of a controlled substance. The worker testified that he searched the home and found a substantial number of cigarettes and what he believed to be the mother's purse. At first, petitioner denied that the mother was staying there; later however, petitioner admitted that the cigarettes belonged to the mother. The worker testified that the mother left the home while he was present, but, after he left the home, he observed petitioner drive a short distance from the home, locate the mother, and pick her up. Further, the worker testified that petitioner, the mother, and the youngest child were later seen together. A second DHHR case worker testified to corroborate this testimony.

The DHHR also called petitioner's oldest son, then eighteen years old, who testified that petitioner acknowledged to him that the mother was staying overnight in the home.[2] According to the son, petitioner believed that he could help the mother get away from drugs while she stayed with him. Based on this evidence, the circuit court adjudicated petitioner and found that he "abandoned [the] proceeding and [exposed] the Infant Respondents to an abusing parent and drugs."

In September of 2017, petitioner appeared for his dispositional hearing and the parties agreed to hold a multidisciplinary team ("MDT") meeting to address disposition. The circuit court ordered petitioner to participate in random drug screening. The parties returned and indicated that a parental fitness evaluation and substance abuse evaluation were necessary to determine what services petitioner required. Accordingly, the circuit court ordered petitioner to participate in those examinations and continued disposition. Petitioner failed to attend a hearing in December of 2017. In response, the DHHR filed a motion to terminate petitioner's parental rights alleging that petitioner failed to comply with services and had abandoned the proceedings.

The circuit court held the final dispositional hearing in January of 2018 and heard evidence on the DHHR's motion to terminate petitioner's parental rights and petitioner's oral motion for an improvement period.[3] A DHHR case worker testified that petitioner was referred

---

[2]Petitioner's oldest son reached the age of majority shortly after this proceeding began and was dismissed from the petition.

[3]It is clear from the record that petitioner did not file a written motion for an improvement period, as required by West Virginia Code §49-4-610; regardless, the circuit court heard evidence and ruled on petitioner's motion.

for random drug screens, parenting classes, adult life skills classes, and a parental fitness evaluation. According to the worker, petitioner failed to attend his parental fitness evaluation and had contacted her to reschedule the evaluation. Also, the worker testified that, based on emails she received from the parenting class provider, petitioner was not compliant with parenting classes. Further, petitioner failed to exercise visitation with the children since September of 2017. A case manager from the drug screen facility testified that petitioner was required to screen fourteen times in December of 2017, but only tested two of those times. Petitioner testified that his work schedule made it difficult to attend drug screening; however, petitioner also admitted that he set his own work hours. When asked why he missed the parental fitness examination, petitioner testified that he was never notified of the evaluation. Additionally, petitioner admitted that the last time he saw the parenting class provider was in September of 2017.

Ultimately, the circuit court found that petitioner was unlikely to fully participate in the terms of an improvement period based on his failure to participate in services throughout the proceedings. Further, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future because petitioner had not responded to or followed through with rehabilitative efforts designed to reduce or prevent the abuse or neglect of the children. Moreover, the circuit court found that terminating petitioner's parental rights was in the best interests of the children. Accordingly, the circuit court denied petitioner's improvement period and terminated his parental rights in its February 7, 2018, order. Petitioner now appeals that order. [4]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[4]The mother's parental rights were terminated in a previous proceeding. According to the parties, S.L. is currently placed with his paternal grandmother with a permanency plan of adoption in that home. L.L.-1 and L.L.-2 are currently in a group home while the DHHR continues to search for possible adoptive placements.

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first argues that the circuit court erred in finding that the conditions of abuse and neglect had not been remedied. Petitioner asserts that he was adjudicated based on evidence that he exposed the children to their mother and drugs and that the DHHR presented no evidence that he continued to associate with the mother after the petition was filed. Petitioner states that he denied continued association with the mother and, as that was the only evidence presented on the issue, the circuit court erred in finding the conditions of abuse and neglect were not be remedied and could not be substantially corrected in a reasonable time. We disagree.

We have held as follows:

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The circuit court correctly found that the conditions of abuse and neglect were not corrected because petitioner failed to acknowledge the issue that led to the filing of the petition. In the prior case, the children's mother failed to remedy her substance abuse issues and her parental rights were terminated. Further, the record shows that the mother continued to abuse controlled substances. In fact, according to petitioner's eldest son, the mother's continued drug abuse was petitioner's motive to invite her in the home and attempt to help her. However, petitioner never acknowledged the effect his decision would have on the children. When questioned during the dispositional hearing, petitioner stated, "I knew it was wrong, but the kids were wanting to see her. I never left them in her attendance by theirself [sic]." The DHHR questioned, "[w]ell, if you knew it was wrong before and you did it, what's to stop you from doing it again if we give you the kids back?"; Petitioner answered "[b]ecause my kids are on the line, and I want my kids back." Clearly, petitioner did not recognize the problem of allowing a known drug user around his children and, ultimately, he failed to acknowledge this issue. Rather, petitioner minimized the potential for harm for his own interests. Although petitioner argues that he no longer associated with the mother, petitioner's failure to acknowledge and understand the problem continues to place the children at risk for further exposure to other inappropriate and dangerous people. Accordingly, we find that the evidence presented supported the circuit court's finding that the conditions of abuse and neglect were not remedied.

Petitioner also argues that the circuit court erred in finding that he willfully refused to cooperate in the development of a reasonable family case plan. Specifically, petitioner argues that a parental fitness evaluation was necessary to determine what terms were necessary for a family case plan. Petitioner asserts that the DHHR did not prove that it notified him of the

4

evaluation after it was scheduled. Thus, the circuit court's finding that he willfully refused to cooperate was erroneous. We disagree.

The circuit court's finding that petitioner failed to follow through with services to correct the conditions of abuse and neglect. West Virginia Code § 49-4-604(c)(3) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts. . . ." The parental fitness evaluation was a pivotal piece of the development of a case plan and the circuit court ordered petitioner to participate in that evaluation. Despite this, petitioner made no effort himself to attend that evaluation or confirm the appointment. Further, petitioner's testimony that he was not notified is in contradiction to the DHHR case worker who testified that appointments are not scheduled unless confirmed with the participant. However, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). The circuit court clearly did not find petitioner's excuse credible and relied on the DHHR case worker's testimony that petitioner must have been informed of the evaluation. Therefore, in light of petitioner's failure to participate in any services, supervised visitation, and the parental fitness evaluation, we find no error in the circuit court's finding that petitioner failed to follow through with services to correct the conditions of abuse and neglect.

Finally, the circuit court found that termination of petitioner's parental and custodial rights was consistent with the children's best interests based on his inability to remedy the problems in his parenting. West Virginia Code § 49-4-604(b)(6) provides that the circuit court may terminate parental rights when "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." We have previously held

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). The circuit court appropriately found that it would be impossible to safely return the children to petitioner's home and that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected. Accordingly, the circuit court's findings are sufficient to terminate petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 7, 2018, order is hereby affirmed.

5

Affirmed.

**ISSUED**:  October 12, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.

6